THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| John J. Luque,<br><br>                    Plaintiff,<br><br>v.<br><br>Martin O'Malley,<br>Commissioner of Social Security,<br><br>                    Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:23-cv-500 DBP<br><br>Chief Magistrate Judge Dustin B. Pead |

John Luque appeals the denial of his application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the Social Security Act (Act). This matter has had a long history with multiple Administrative Law Judge decisions, and a remand by this court previously pursuant to an unopposed motion to remand by Defendant.[1] After considering the record and the parties' memoranda, the court denies Plaintiff's Motion for Review of Social Security Agency Action.[2]

BACKGROUND

Mr. Luque applied for DIB and SSI in October 2015 alleging disability beginning November 2008. Following a number of procedural issues including other decisions, an ALJ issued a decision on December 23, 2022, finding Plaintiff not disabled. The ALJ held two hearings, one on April 14, 2021,[3] and another on October 25, 2022.[4] The focus of these hearings was "to obtain additional evidence concerning the claimant's treatment with Dr. Sullivan-

---

[1] *Luque v. Saul*, Case No. 2:19-cv-538 CMR (D. Utah 2019)

[2] ECF No. 14.

[3] Tr. 3174. Citations to the record before the court are to the bottom of the page.

[4] Tr. 3207.

Sakaeda, and give further consideration to the claimant's maximum residual functional capacity."[5]

Dr. Sullivan-Sakaeda testified on Mr. Luque's behalf at both hearings. She opined that Mr. Luque had complex PTSD which "has more intense symptoms than standard PTSD, more emotional instability."[6] At the October hearing, the ALJ noted missing records from Dr. Sullivan-Sakaeda. The ALJ specifically told Plaintiff's counsel, who represented him at the hearing, "there's just no substitute for the treatment records. Opinions, without the treatment records to back them up, have very little persuasive value."[7] Plaintiff's Counsel did not ask Dr. Sullivan-Sakaeda about the missing records during the hearing, how to acquire them, or when they would be available. The ALJ held the record open for 14 days after the October hearing for the submission of additional records from Dr. Sullivan-Sakaeda and Dr. Firmage. No additional records were submitted.

Applying the agency's five-step sequential evaluation process,[8] the ALJ found Mr. Luque had not engaged in any substantial gainful activity since his alleged onset date in November

---

[5] Tr. 3144.

[6] Tr. 3184.

[7] Tr. 3244.

[8] The Tenth Circuit has described the five-step evaluation process as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations and internal quotation marks omitted).

2008. At step two, the ALJ found he had multiple severe impairments including polysubstance abuse, depression, posttraumatic stress disorder (PTSD), and anxiety disorder. These impairments either alone or in combination, the ALJ found, were not equivalent to a listed impairment.

The ALJ then considered Mr. Luque's medical record in determining his residual functional capacity (RFC). The ALJ noted good visits with certain medical providers in October 2015, March 2016, May 2018, and September 2019.[9] The ALJ also noted a negative visit in November 2018, where Mr. Luque was agitated and shouting. The ALJ found Plaintiff had the RFC to perform a full range of work at all exertional levels with certain limitations.[10]

The ALJ found Mr. Luque was unable to perform any past relevant work at step four. At step five, based on the RFC determination, and the testimony of a vocational expert (VE), the ALJ found Mr. Luque could perform other work in the national economy and therefore denied benefits.[11] The Appeals Council denied review and Plaintiff now appeals.[12]

## LEGAL STANDARDS

Because the Appeals Council denied review, the ALJ's decision is the final agency decision.[13] The court examines the ALJ's decision to determine whether it is free from legal error and supported by substantial evidence.[14] The court, however, may not "reweigh the

---

[9] Tr. 3148.

[10] These include limiting Mr. Luque to "simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few workplace changes, no interaction with the public, and only occasional brief and superficial interaction with co-workers and supervisors." Tr. 3150.

[11] Other representative occupations the ALJ found Plaintiff could perform include marker, routing clerk, and collator operator. Tr. 3162.

[12] Tr. 3135. The parties consented to the jurisdiction of the undersigned with appeal directly to the United States Court of Appeals for the Tenth Circuit. ECF No. 9. *See* DUCivR 72-4.

[13] *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

[14] *See Wall*, 561 F.3d at 1052.

evidence nor substitute [its] judgment for that of the agency."[15] "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations."[16] This evidentiary requirement is "not high."[17] Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]

DISCUSSION

Mr. Luque brings three claims of error. First, a failure to follow SSA procedures for evaluating the effects of all impairments. Second, the ALJ in this case failed to follow the proper process in assessing the effects of drugs and alcohol. And this error was not harmless. Finally, the ALJ failed to assign "controlling weight" or "treating physician" deference to Dr. Laurie Sullivan-Sakaeda's opinions. The court addresses each of these alleged errors in turn.

First, Plaintiff alleges the ALJ failed to follow SSA procedure. Plaintiff outlines the history of drug and alcohol abuse (DAA) analysis in social security cases and argues the ALJ failed to follow the steps for considering whether DAA was disabling.

The DAA analysis arose from Congress's passing of the *Contract with America Advancement Act* of 1996 that delisted drugs and alcohol addiction as mental disabilities themselves.[19] "The Act amended the Social Security Act to provide that '[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's

---

[15] *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

[16] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets and internal quotation marks omitted).

[17] *Id.*

[18] *Id.* (internal quotation marks omitted).

[19] Pub.L. No. 104–121, 110 Stat. 848, 852 (enacted March 29, 1996).

determination that the individual is disabled.'"[20] This Act added an extra step to the five-step sequential evaluation for claimants with DAA. First, an ALJ must determine that a claimant is disabled. Then a determination must be made "whether the claimant would still be found disabled if he or she stopped abusing" drugs or alcohol.[21] An ALJ cannot begin to apply a DAA analysis when the ALJ "has not yet made a finding of disability."[22] This court set forth the process in *Cecala v. Berryhill*.[23]

> If, and only if, the ALJ finds that Plaintiff is disabled and there is medical evidence of DAA, then the ALJ should proceed and make a materiality finding with respect to Plaintiff's DAA. If the ALJ finds Plaintiff not disabled with DAA impairments, then no further analysis or materiality determination is necessary.[24]

Plaintiff also notes this process in his opening brief via a table setting forth a series of questions addressing the fact pattern here.[25]

Here, the ALJ found Mr. Luque had multiple serve impairments including polysubstance abuse. The ALJ then found that Mr. Luque was not disabled despite having these impairments. Therefore, contrary to Plaintiff's arguments, there was no requirement for the ALJ to engage in DAA analysis.

Plaintiff's reliance on *Salazar v. Barnhart*,[26] is inapplicable here. In *Salazar*, the ALJ concluded the claimant would not be disabled without the effects of drug and alcohol abuse or that with those effects, the claimant would be disabled. On appeal, the Tenth Circuit held that there was "not substantial evidence to support the ALJ's conclusion that Ms. Salazar would not

---

[20] *Salazar v. Barnhart*, 468 F.3d 615, 622-23 (10th Cir. 2006) (quoting 42 U.S.C. § 423(d)(2)(C)).

[21] *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).

[22] *Id*.

[23] 2017 WL 4326488 (D. Utah Sept. 28, 2017).

[24] *Id.* at *3.

[25] ECF No. 14 p. 6. Citations are to the number at the bottom of the page.

[26] 468 F.3d 615 (10th Cir. 2006).

be disabled in the absence of her DAA."[27] Here, the ALJ determined that Mr. Luque was not disabled even with his polysubstance abuse. Thus, there was no "misapplication of the law."[28] Contrary to Mr. Luque's position, *Cecala* also dictates the same result. If, and only if, the ALJ finds that a plaintiff is disabled and there is medical evidence of DAA, then the ALJ must engage in the extra step of considering DAA. The extra step of considering DAA was unnecessary here as Plaintiff was not found disabled.

Mr. Luque also points to a prior decision in the record from ALJ Stuber, arguing that the ALJ in the decision at issue here, ignored his extensive chronic drug history and did not engage in a DAA analysis like ALJ Stuber. The ALJ's decision belies Plaintiff's arguments. The ALJ here noted Plaintiff's testimony about his troubled past that included fights, drugs, and gangs.[29] And, as already noted above, there was no need to engage in a DAA analysis here. Finally, the ALJ here was not bound by the prior ALJ decision and considered the issues *de novo*, including evidence of sobriety. Thus, the court rejects the arguments that the current ALJ decision was somehow flawed because it did not mirror a prior ALJ decision.

Plaintiff's second assignment of error is closely related to the first. Mr. Lugue argues "[t]he failure of ALJ Crowell to follow proper procedure in assessing the effects of drugs and alcohol was not harmless error."[30] This argument is unpersuasive. As already noted, "The Commissioner must first make a determination that the claimant is disabled. He must then make a determination whether the claimant would still be found disabled if he or she stopped abusing

---

[27] *Id.* at 624.

[28] *Id.*

[29] Tr. 3152.

[30] ECF No. 14 p. 15.

alcohol."[31] Here, Plaintiff was never found disabled. "The implementing regulations make clear that a finding of disability is a condition precedent to an application of" DAA analysis.[32] Thus, there is no error or "harmless error" in the ALJ's analysis.

Plaintiff's final allegation of error surrounds the deference given to Dr. Sullivan-Sakaeda and the weighing of her opinions. In assigning Dr. Sullivan-Sakaeda's opinion partial weight, the ALJ found internal inconsistencies in the opinion.[33] The ALJ also found Dr. Sullivan-Sakaeda's opinion was inconsistent with others medical opinions from 2016 and 2019 that bracketed the 2018 opinion. Further, the found Dr. Sullivan-Sakaeda's opinion had weak support. This last determination is consistent with the ALJ's statements at the October hearing regarding the necessity of treatment records that were not provided by Plaintiff.[34]

The ALJ also considered two letters from Dr. Sullivan-Sakaeda discounting their weight because they "did not state any functional limitations in either letter."[35] Moreover, they were also not consistent with medical evidence during Plaintiff's periods of sobriety. On March 5, 2021, Dr. Sullivan-Sakaeda provided another medical opinion statement. This opinion opined fairly severe restrictions for Plaintiff such as being unable to maintain attention and concentration for extended periods, being unable to work in coordination with or in proximity to others without being distracted, and being unable to complete a normal workday and workweek without interruptions from psychologically based symptoms.[36] Dr. Sullivan-Sakaeda also opined that Mr.

---

[31] *Drapeau*, 255 F.3d at 1214.

[32] *Id.*

[33] Tr. 3154-55.

[34] *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record … and later fault the ALJ for not performing a more exhaustive investigation.").

[35] Tr. 3155.

[36] Tr. 3786.

7

Luque would be off work three or more days during the month due to physical and mental limitations. The ALJ discounted this opinion based on Dr. Sullivan-Sakaeda's "tendency not to question, but to rely on, the claimant's statements" even though Dr. Sullivan-Sakaeda recognized them as problematic. The ALJ further noted inconsistencies between the 2021 opinion and other medical evidence. Finally, the ALJ discussed Dr. Sullivan-Sakaeda's testimony given at the hearings assigning it partial weight for the same reasons he discounted her other opinions.

The Tenth Circuit has stated that "'[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'"[37] Given the ALJ's analysis, and the record before the court, there was no error here in not giving Dr. Sullivan-Sakaeda's opinion controlling weight. Although she treated Plaintiff, her opinions were contradicted by other medical evidence and not well-supported by her own documentation. The ALJ gave specific, legitimate reasons for discounting her opinions.[38] "That the ALJ did not explicitly discuss all the § 404.1527(d) factors[39] for each of the medical opinions before him does not prevent this court from according

---

[37] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96–2p, 1996 WL 374188, at *2).

[38] *See id.*

[39] The Tenth Circuit has set forth factors such as

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

his decision meaningful review."[40] The ALJ provided good reasons in the decision for the weight he assigned Dr. Sullivan-Sakaeda. And that is sufficient under the regulations and case law.[41]

## CONCLUSION

The ALJ's decision is supported by substantial evidence and legally sound. It is therefore AFFIRMED, and Plaintiff's Motion for Review of Agency Decision is DENIED.[42] Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the Supreme Court's decision in *Shalala v. Schaefer*.[43]

DATED this 23 September 2024.

Dustin B. Pead
United States Magistrate Judge

---

[40] *Id.*

[41] *See id.* 20 C.F.R. § 404.1527 (effective until March 27, 2017).

[42] ECF No. 14.

[43] 509 U.S. 292, 296-304 (1993).